# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### WAYCROSS DIVISION

PAULINE HARRIS,      )
             )
    Plaintiff,     )
             )
    v.        )   CIVIL ACTION NO.: CV508-022
             )
MICHAEL J. ASTRUE,      )
Commissioner of Social Security,  )
             )
    Defendant.    )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of the Commissioner to terminate her Disability Insurance Benefits. Plaintiff urges the Court to reverse the Commissioner's decision and enter an award finding Plaintiff disabled, or, in the alternative, to remand this case for further consideration of the evidence. Defendant asserts that the Commissioner's decision should be affirmed.

Plaintiff was found disabled as of August 15, 1993, in a decision dated June 22, 1994, as the result of affective disorders and anxiety. (Tr. at 64, 66). It was determined that Plaintiff was no longer disabled as of April 1, 2003. Plaintiff filed a timely request for a hearing after this determination was upheld upon reconsideration. On June 14, 2007, ALJ G. William Davenport ("ALJ" or "ALJ Davenport") held a hearing at which Plaintiff appeared and testified. Jackson C. McKay, a vocational expert, also testified at this hearing. (Tr. at 64). The ALJ determined that Plaintiff's disability ended as of April

1, 2003. (Tr. at 74). The Appeals Council noted that it had received additional evidence and then denied Plaintiff's request for review of the ALJ's decision. (Tr. at 4-6). The decision of the ALJ became the final decision of the Commissioner for judicial review.

Plaintiff, born on September 7, 1957, was forty-nine (49) years old when ALJ Davenport issued his decision. (Tr. at 73). She has a GED. (Tr. at 674). Her past relevant work experience includes employment as a sewing machine operator. (Tr. at 73).

## ALJ'S FINDINGS

If a person is entitled to disability benefits, the Commissioner is required to conduct a periodic review to determine whether those benefits should continue. 20 C.F.R. § 404.1594(a). The benefits cease if there has been medical improvement related to the claimant's ability to work. Id. Medical improvement is defined as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). A decrease in severity determination must be based on improvements in the claimant's symptoms, signs or laboratory findings. Id.

The Social Security regulations provide an eight-step sequential evaluation process for determining whether a claimant's disability continues. 20 C.F.R. § 404.1594(f). The first step determines if the claimant is engaged in "substantial gainful activity." If the claimant is performing substantial gainful activity and any applicable trial work period has been completed, the claimant is no longer disabled. 20 C.F.R. § 404.1594(f)(1). If the claimant is not engaged in such activity, it must be determined at

the second step whether the claimant's severe impairment meets or equals the severity of a listed impairment. If the claimant's condition meets or equals the level of severity of a listed impairment, the claimant's disability continues. 20 C.F.R. § 404.1594(f)(2). If not, the examiner proceeds to the third step, namely, an assessment of whether there has been medical improvement in the claimant's condition. 20 C.F.R. § 404.1594(f)(3). The analysis proceeds to the fourth step if medical improvement has occurred or the fifth step if medical improvement has not occurred. It must be determined at the fourth step if the medical improvement is related to the ability to do work. If the medical improvement results in an increase in the claimant's ability to perform basic work activities, the analysis proceeds to the sixth step. 20 C.F.R. § 404.1594(f)(4). At step five, the examiner determines whether any exceptions listed in 20 C.F.R. § 404.1594(d) and (e) apply. 20 C.F.R. § 404.1594(f)(5). There are two groups of exceptions and the analysis proceeds to step six if one of the first group of exceptions applies. The claimant's disability ends if an exception in the second group applies. If no exceptions apply, the claimant's disability continues. At the sixth step, if there has been medical improvement, it must be determined whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. § 404.1594(f)(6). The claimant is no longer disabled if all current impairments in combination do not significantly limit the claimant's ability to do basic work activities. The analysis proceeds to the seventh step if the claimant's current impairments limit his or her ability to do work. The examiner must assess the claimant's residual functional capacity and determine whether he or she can perform past relevant work at step seven. 20 C.F.R. § 404.1594(f)(7). If the claimant has the ability to perform past relevant work, he or she is no longer disabled. The

analysis proceeds to the last step if the claimant cannot perform past relevant work. At step eight, the examiner must determine whether, in light of the claimant's residual functional capacity, age, education and work experience, the claimant can perform other work. Disability benefits will continue only if the claimant is unable to perform other work. 20 C.F.R. § 404.1594(f)(8).

In the instant case, the ALJ followed the sequential process to determine that Plaintiff has not engaged in substantial gainful employment after April 1, 2003. At Step Two, the ALJ determined that since April 1, 2003, Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. at 66). The ALJ further determined, at Step Three, that medical improvement had occurred. At Step Four, the ALJ determined that Plaintiff's medical improvement was related to the ability to do work because it resulted in an increase in her residual functional capacity. (Tr. at 67). The ALJ found, at Step Six, that Plaintiff continued to have a severe impairment or combination of impairments that limited her ability to do work. (Tr. at 68). At Step Seven, the ALJ found that Plaintiff was unable to perform past relevant work. (Tr. at 73). However, the ALJ determined, at Step Eight, that Plaintiff was not disabled because she was able to perform a significant number of jobs that exist in the national economy. (Tr. at 73-74).

## ISSUES PRESENTED

The issues presented in this review are whether:

I.      substantial evidence supports the ALJ's finding; and

II.     the ALJ properly discounted the opinion of Plaintiff's treating physician, Dr. Lina Harper.

## STANDARD OF REVIEW

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F. 2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F. 2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F. 3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F. 2d 835, 838-39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F. 3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F. 2d at 1146.

## DISCUSSION AND CITATION TO AUTHORITY

### I.    Substantial evidence does not support the ALJ's finding.

Plaintiff asserts that the Commissioner's denial of benefits is not supported by substantial evidence. Plaintiff notes that ALJ Davenport determined that Dr. Marc Eaton

was both a treating and examining medical source. Plaintiff further notes that while ALJ Davenport stated that he gave significant weight to Dr. Eaton's opinions, he did not do so. Plaintiff further contends that the ALJ did not follow Dr. Eaton's opinions from either 2004 or 2007. Plaintiff notes that, at the hearing, her attorney proposed a hypothetical that tracked Dr. Eaton's 2007 opinion exactly and the vocational expert testified that no work was available for such a person. (Doc. No. 23, p. 20). Plaintiff further notes that the ALJ specifically asked counsel where her hypothetical limitations came from and counsel pointed the ALJ to Dr. Eaton's 2007 consultative evaluation report. (Id. at 26). Plaintiff asserts that ALJ Davenport did not base his decision on Dr. Eaton's findings as he alleged, but instead substituted his own findings of what she could do on a regular and sustained basis. (Id. at 21). Plaintiff further asserts that if Dr. Eaton's opinion is given significant weight, a finding of disabled is required because the ALJ must pose a hypothetical which comprehensively describes the claimant's impairments. (Id. at 26) (citing Pendley v. Heckler, 767 F. 2d 1561 (11th Cir. 1985)).

Defendant contends that Dr. David Grippe's and Dr. Stanley Wallace's treatment notes, medical reports, and assessments provide the necessary substantial evidentiary support for ALJ Davenport's residual functional determination. (Doc. No. 29, p. 7). Defendant further contends that the ALJ carefully considered all of the medical evidence and assigned appropriate weight to the evidence based upon his evaluation of the medical record in its entirety. Defendant asserts that ALJ Davenport did not discount Dr. Eaton's opinion evidence in its entirety, but rather assigned limited probative weight to those portions of his opinion that were not supported by the evidence. Defendant further asserts that such a determination was properly within the province of the ALJ as

the trier of fact. (Id. at 8). Defendant contends that the ALJ reasonably relied on the testimony of the vocational expert in finding that Plaintiff could perform alternative work. (Id. at 10).

It is well-established that the opinion of a treating physician "must be given substantial or considerable weight unless good cause is shown to the contrary." Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause" exists when: (1) the treating physician's opinion is not supported by the record; (2) the record supports a finding inconsistent with the treating physician's opinion; or (3) the treating physician's opinion is conclusory or inconsistent with his own medical records. Id. at 1241. When the ALJ rejects the opinion of the treating physician, he must specify that he is doing so and must articulate a reason for not giving the opinion weight. MacGregor v. Bowen, 786 F. 2d 1050, 1053 (11th Cir. 1986). The ALJ must give "explicit and adequate" reasons for rejecting the opinion of a treating physician. Elam v. Railroad Retirement Board, 921 F.2d 1210, 1215 (11th Cir. 1991). The ALJ is required to "state with particularity the weight he gave different medical opinions and the reasons therefore." Sharfarz v. Bowen, 825 F. 2d 278, 279 (11th Cir. 1987). A medical source's statement about what an individual can still do is medical opinion evidence that an adjudicator must consider. Social Security Ruling ("SSR") 96-5p. Adjudicators must weigh medical source statements under the rules set out in 20 C.F.R. § 404.1527 and § 416.927 and provide appropriate explanations for accepting or rejecting such opinions. Id. Although the overall residual functional capacity assessment is a finding on an issue reserved to the Commissioner,

the adjudicator must nevertheless adopt in that assessment any treating source medical opinion to which the adjudicator has given controlling weight. Id.

Through the use of vocational expert testimony, the ALJ must articulate specific jobs which the plaintiff is able to perform. Cowart v. Schweiker, 662 F.2d 731, 736 (11th Cir. 1981). The hypothetical questions which the ALJ poses to the vocational expert must comprehensively describe the claimant's impairments. Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). However, the hypothetical need only include the impairments which the ALJ accepts as true. McKay v. Apfel, 1999 WL 1335578, *7 (M.D. Ala. Dec. 9, 1999) (citing Haynes v. Shalala, 26 F.3d 812, 815 (8th Cir. 1994)).

ALJ Davenport noted that the most recent favorable medical decision finding Plaintiff disabled is dated June 22, 1994. This is known as the comparison point decision ("CPD"). (Tr. at 65). ALJ Davenport further noted that at the time of the CPD, Plaintiff had the medically determinable impairments of affective disorder and anxiety. The ALJ observed that through April 1, 2003, Plaintiff had the impairments of alcoholism in possible remission; anxiety and depression; borderline IQ; chronic obstructive pulmonary disease with ongoing tobacco abuse; mild coronary artery disease; and musculoskeletal aches and pains. ALJ Davenport determined that since April 1, 2003, Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. at 66).

The ALJ remarked that Plaintiff sought and received very little psychiatric or medical treatment or evaluation during 2002 and 2003. ALJ Davenport observed that Plaintiff was seen at Satilla Mental Health and reported that her medication had worked because she was crying less and sleeping better. Plaintiff was described as alert,

oriented, with an appropriate affect, and euthymic mood. ALJ Davenport noted that Plaintiff was seen later that year at Satilla Mental Health and was mildly depressed after spending the past six months in jail. The ALJ remarked that there is no other evidence of Plaintiff receiving any further mental health treatment at Satilla in either 2002 or 2003. The ALJ further remarked that the treatment notes from Plaintiff's treating physician, Dr. Sandra H. Gibbs, show that her medications were doing great and that there were no other complaints. One of Dr. Gibbs' treatment notes indicated that Plaintiff felt happy, denied depression, had a stable mood, no fatigue, and slept okay. ALJ Davenport remarked that, based on the medical records, Plaintiff had not experienced medically documented persistent depressive syndrome, manic syndrome, or bi-polar syndrome. ALJ Davenport further remarked that there was no evidence of repeated episodes of decompensation or an inability to function outside of a highly supportive living arrangement. The ALJ found that the evidence did not support a finding of anxiety accompanied by motor tension, autonomic hyperactivity, apprehensive expectations, or vigilance and scanning. The ALJ further found no evidence of recurrent severe panic attacks, recurrent obsessions or compulsions, or recurrent and intrusive recollections of a traumatic experience. (Tr. at 66). ALJ Davenport determined that the evidence failed to support a finding of marked restriction in activities of daily living; social functioning; maintaining concentration, persistence, or pace; or repeated episodes of decompensation. (Tr. at 66-67).

The ALJ determined that medical improvement occurred as of April 1, 2003. The ALJ further determined that there had been a decrease in the medical severity of the impairments present at the time of the CPD. ALJ Davenport observed that at the time of

the CPD, Plaintiff's medical evidence showed that she had a history of complaints and treatment for major depression and an anxiety disorder with reported symptoms of decreased appetite, isolation, crying spells, and difficulty concentrating, which resulted in marked limitations of daily activities. ALJ Davenport further observed that Plaintiff's medical records show that she reported doing very well and that her medications were working well. Plaintiff's depression was noted to be stable and her mood was described as euthymic. The ALJ remarked that Plaintiff was noted to have some mild depression and anxiety following several months of imprisonment. The ALJ further remarked that Plaintiff was no longer involved in counseling for her alleged mental impairments. ALJ Davenport observed that although Plaintiff later reported to Dr. Eaton that she stopped counseling because it didn't work, her treatment records from Satilla show that the treatment was very effective. (Tr. at 67).

The ALJ found that as of April 1, 2003, Plaintiff's impairments present at the time of the CPD had decreased in medical severity to the point that she had the residual functional capacity to remember locations and work-like procedures, as well as remember and understand simple instructions. The ALJ further found that Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods; to work in coordination with or in proximity to others; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; and to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. ALJ Davenport determined that Plaintiff was able to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions

from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and had no problem responding appropriately to changes in a work setting, bewaring of normal hazards and taking appropriate precautions, and travelling to unfamiliar places using public transportation. ALJ Davenport further determined that Plaintiff had the ability to perform at least medium exertional work. The ALJ remarked that in making his residual functional capacity assessment, he did not consider the limiting effects of the impairments that developed after the CPD. The ALJ found that Plaintiff's medical improvement is related to the ability to do work because it resulted in an increase in her residual functional capacity. (Tr. at 67).

ALJ Davenport determined that Plaintiff continued to have a severe impairment or combination of impairments as of April 1, 2003. ALJ Davenport further determined that based on the impairments present as of April 1, 2003, Plaintiff had the residual functional capacity to perform medium work with the ability to perform frequent climbing, stooping, and crawling; occasional crouching and kneeling; and should not work in an environment where she would have more than occasional exposure to high concentration of dust, fumes, smoke, chemicals, or noxious gases. The ALJ found that Plaintiff is moderately limited with regard to relating to co-workers; dealing with the public; maintaining attention and concentration; and understanding, remembering, and carrying out detailed instructions. The ALJ remarked that Plaintiff would be best suited for simple or lower end detailed and low stress work of a repetitive nature that does not require prolonged interpersonal interactions. The ALJ further remarked that Plaintiff should not work in jobs that give her access to alcoholic beverages. ALJ Davenport

noted that in reaching his conclusions, he considered all symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence. ALJ Davenport further noted that he also considered opinion evidence. (Tr. at 68).

The ALJ observed that Plaintiff gave very inconsistent responses to questions about her daily activities. The ALJ remarked that Plaintiff reported in a daily living questionnaire that she does not prepare her own meals, but later reported that she cooks on a daily basis and that she performs other household chores such as laundry, cleaning, and doing the dishes. The ALJ further remarked that later in the same questionnaire, Plaintiff reported needing help with vacuuming and washing dishes. ALJ Davenport noted that Plaintiff denied doing any shopping and reported that all the shopping was performed by her daughter and sister, but nonetheless stated that she was able to handle her own money. ALJ Davenport observed that despite already reporting that her sister performed her shopping, Plaintiff denied having any social contacts, friends, or seeing her family. The ALJ remarked that Plaintiff alleged that she had memory problems, depression, and anxiety attacks. Plaintiff further alleged that she cries all the time and is unable to be around people. (Tr. at 69).

The ALJ noted that Dr. Eaton saw Plaintiff for a consultative psychological examination on February 19, 2004. The ALJ further noted that Plaintiff was able to drive herself to Dr. Eaton's office alone despite her allegations that she is afraid to leave her house alone and that her memory is bad. ALJ Davenport observed that Plaintiff stated that she was not involved in any psychological treatment "because it don't work". (Tr. at 69). ALJ Davenport remarked that Plaintiff's records from Satilla Mental Health

indicate that she received significant benefits from treatment as shown by her statements that her medications were working, that she was crying less, and was sleeping better. (Tr. at 69-70). ALJ Davenport further remarked that Plaintiff later stated that she left treatment because she did not want to go to appointments because she felt safe at home. The ALJ noted that although Plaintiff drove to see Dr. Eaton, she reported that her sister has to drive her to her doctors' appointments every two months. The ALJ further noted that Plaintiff admitted to a history of alcohol abuse, but stated that she last drank in 1986 or 1987 after receiving treatment. The ALJ observed that Plaintiff indicated that she quit school in order to get away from home and failed to report receiving her GED. ALJ Davenport noted that Dr. Eaton administered a Wechsler Adult Intelligence Scale, Third Edition ("WAIS-III") test and Plaintiff's IQ scores indicated intellectual functioning in the extremely low range. ALJ Davenport remarked that Dr. Eaton did not consider Plaintiff's IQ scores to be valid because of her vocational history and the quality of her verbal communications. The ALJ observed that other test results indicated that Plaintiff gave a poor or incomplete effort during testing. The ALJ further observed that Dr. Eaton opined that Plaintiff was likely malingering. ALJ Davenport noted that Plaintiff's school records show that she was not in special education classes and her school performance indicates that she was performing at a much higher level than is indicated by her 2004 IQ scores. ALJ Davenport further noted that Plaintiff home schools her 15 year old daughter, which is very inconsistent with her allegations of being mentally retarded and having such significant memory and mental problems that she is unable to take care of her own personal needs or perform basic daily activities. (Tr. at 70).

ALJ Davenport observed that after over a year of no medical treatment, Plaintiff was seen by Dr. Linda Harper in April of 2005 with complaints of coughing and congestion; depression (she had not taken medication in two months); left shoulder pain; and chronic back pain. ALJ Davenport further observed that Dr. Harper's treatment notes indicate that Plaintiff's physical examination yielded normal results, but she prescribed an anti-inflammatory medication, a narcotic pain reliever, a medication for Plaintiff's cough and congestion, and an anti-depressant and anti-anxiety drug. (Tr. at 70). ALJ Davenport remarked that Dr. Harper's records for 2006 indicate that Plaintiff had control of her pain and anxiety with her medications. The ALJ noted that Dr. Harper completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) in late 2006. However, ALJ Davenport found that Dr. Harper's treatment notes provide no objective evidence to support her opinions and that her treatment failed to list any signs, symptoms, or other findings to support the mental limitations set forth in her statements. ALJ Davenport thus gave little weight to Dr. Harper's medical opinions. (Tr. at 71).

The ALJ noted that Plaintiff began receiving psychological treatment from Dr. Eaton in 2006. The ALJ further noted that Dr. Eaton's diagnostic impression following the initial visit was major depressive disorder, mild, and an anxiety disorder. The ALJ observed that Plaintiff missed several appointments during the brief period she was treated by Dr. Eaton. The ALJ further observed that Dr. Eaton declined Plaintiff's request to complete a Medical Source Statement of Ability to Do Work-Related Activities (Mental) form. (Tr. at 71).

ALJ Davenport remarked that Dr. Eaton saw Plaintiff for a second psychological consultative evaluation in January of 2007. ALJ Davenport noted that Plaintiff demonstrated significantly higher abilities in math and reading than she had during her previous testing with Dr. Eaton. ALJ Davenport further noted that Plaintiff's IQ scores remained in the extremely low range and were not consistent with her vocational history or other test scores. Dr. Eaton opined that Plaintiff's description of her alleged panic attacks did not meet the necessary complement of symptoms for a diagnosis of panic attacks. (Tr. at 71). The ALJ observed that Dr. Eaton continued to question the authenticity of Plaintiff's complaints due to inconsistencies in her reports and presentation. (Tr. at 71-72). The ALJ further observed that Dr. Eaton questioned Plaintiff's commitment to improvement when she was involved in treatment and that her effort to realize improvement was inconsistent at best. ALJ Davenport noted that Dr. Eaton completed a second Medical Assessment of Ability to do Work-Related Activities (Mental), in which he noted that Plaintiff had good abilities to follow work rules and use judgment. Dr. Eaton found Plaintiff to have fair ability to interact with supervisors; function independently; maintain attention and concentration; and to understand, remember, and carry out simple job instructions. Dr. Eaton further found Plaintiff to have poor ability to relate to co-workers, deal with the public, and deal with work stress. ALJ Davenport noted that Dr. Eaton was both a treating and examining physician and that his opinions were based on objective test results and consistent with the majority of credible evidence. ALJ Davenport thus gave significant weight to Dr. Eaton's opinions. (Tr. at 72).

The ALJ remarked that Dr. Wallace saw Plaintiff for a consultative examination in January of 2008. The ALJ noted that, based on Dr. Wallace's examination of Plaintiff, she had no limitations on her ability to lift, carry, stand, or walk. Dr. Wallace opined that Plaintiff could frequently climb, stoop, and kneel. The ALJ observed that Dr. Wallace found that Plaintiff could constantly perform balancing and reaching. The ALJ further observed that Dr. Wallace determined Plaintiff had no limitations in her ability to perform reaching, handling, fingering, and feeling. ALJ Davenport noted that Dr. Wallace found that Plaintiff should avoid work environments where she would be exposed to dust, fumes, and other airborne irritants. The ALJ gave significant weight to Dr. Wallace's findings because they were determined to be consistent with the evidence of record. (Tr. at 72). The ALJ found, after considering the evidence of record, that Plaintiff's medically determinable impairments present as of April 1, 2003, could have reasonably been expected to produce the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible. (Tr. at 72-73).

ALJ Davenport found that Plaintiff was unable to perform past relevant work as of April 1, 2003. ALJ Davenport further found that the transferability of job skills was not material because Plaintiff was "not disabled" whether or not she had transferable job skills. The ALJ determined that as of April 1, 2003, considering Plaintiff's age, education, work experience, and residual functional capacity based on the impairments present on that date, she was able to perform a significant number of jobs in the national economy. ALJ Davenport noted that if Plaintiff had the residual functional capacity to perform the full range of medium work, a finding of "not disabled" would be

directed by Medical-Vocational Rule 203.29. ALJ Davenport further noted that Plaintiff's ability to perform substantially all of the requirements of that level of work was impeded by additional limitations. (Tr. at 73). The ALJ observed that he asked the vocational expert whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, and residual functional capacity as of April 1, 2003. (Tr. at 73-74). The ALJ further observed that the vocational expert testified that the individual would have been able to perform the requirements of the occupations of office helper, mail clerk, and stocker. ALJ Davenport remarked that the vocational expert's testimony was consistent with the information contained in the Dictionary of Occupational Titles. The ALJ concluded that based on the testimony of the vocational expert, Plaintiff was capable of making a successful adjustment to work that existed in significant numbers in the national economy as of April 1, 2003. ALJ Davenport thus found that Plaintiff's disability ended as of April 1, 2003. (Tr. at 74).

The record reveals that Dr. Eaton saw Plaintiff for a consultative examination in 2004. Dr. Eaton administered a WAIS-III test which revealed that Plaintiff had a Verbal IQ of 69, Performance IQ of 60, and Full Scale IQ of 63. These scores are all in the extremely low range. Other tests revealed that Plaintiff gave poor or incomplete effort and was likely malingering. Dr. Eaton completed a Medical Assessment of Ability to Do Work-Related Activities (Mental). In this form, Dr. Eaton indicated that Plaintiff had good ability to follow work rules; understand, remember, and carry out simple instructions; and maintain personal appearance. Dr. Eaton further indicated that Plaintiff had fair ability to use judgment; interact with supervisors; function independently; maintain concentration and attention; understand, remember, and carry

out both complex and detailed job instructions; behave in an emotionally stable manner; and demonstrate reliability. Dr. Eaton found that Plaintiff had fair to poor ability to relate to co-workers and relate predictably in social situations. Dr. Eaton further found that Plaintiff had poor ability to deal with the public and deal with work stresses. Dr. Eaton determined that Plaintiff had generalized anxiety disorder and socially avoidant tendencies. (Tr. at 285-292).

Plaintiff was sent to Dr. Eaton for a second consultative examination in 2007. Dr. Eaton administered another WAIS-III test, which indicated that Plaintiff's Verbal IQ was 70, Performance IQ was 68, and Full Scale IQ was 66. Dr. Eaton noted that the overall level of intellectual functioning was within the extremely low range and that the scores were lower than would be expected. Other tests revealed that Plaintiff gave a good effort and suggested that she was not malingering. Dr. Eaton completed a second Medical Assessment of Ability to Do Work-Related Activities (Mental). Dr. Eaton opined that Plaintiff had good ability to follow work rules; use judgment; understand, remember, and carry out simple job instructions; and maintain personal appearance. Dr. Eaton further opined that Plaintiff had fair ability to interact with supervisors; function independently; maintain attention and concentration; understand, remember, and carry out detailed job instructions; and demonstrate reliability. Dr. Eaton indicated that Plaintiff had fair to poor ability to behave in an emotionally stable manner and relate predictably in social situations. Dr. Eaton further indicated that Plaintiff had poor ability to relate to co-workers; deal with the public; deal with work stresses; and understand, remember, and carry out complex job instructions. Dr. Eaton determined that Plaintiff had anxiety disorder NOS, chronic adjustment disorder with mixed anxiety and

depressed mood, chronic pain disorder associated with both psychological factors and a general medical condition, and personality disorder NOS. (Tr. at 617-624).

At the hearing, ALJ Davenport posed a hypothetical to the vocational expert. With regard to psychological limitations, ALJ Davenport included moderate limits on the ability to relate to co-workers and the public; maintaining concentration and attention; and understanding, remembering, and carrying out detailed instructions. The ALJ indicated that the hypothetical person would be best suited for simple or lower end detailed work of a repetitive, low stress nature, which does not require prolonged interpersonal interactions. The vocational expert testified that the hypothetical person would not be able to perform Plaintiff's past relevant job. However, the vocational expert further testified that a hypothetical person with those same exertional and non-exertional limitations and Plaintiff's age, education, and prior work experience would be able to find employment as an office helper, mail clerk, or stocker. (Tr. at 686-688). Plaintiff's attorney also posed a hypothetical to the vocational expert at the hearing. Plaintiff's attorney's hypothetical included a marked limitation in relating to co-workers, dealing with the public, and dealing with work stresses; a moderate to marked limitation in behaving in an emotionally stable manner and relating predictably in social situations; and a moderate limitation in interacting with supervisors, functioning independently, maintaining attention and concentration, and demonstrating reliability. The vocational expert testified that such a person would not be able to perform any work. ALJ Davenport asked Plaintiff's attorney where those limitations came from and she indicated that they came from Dr. Eaton's last consultative examination. (Tr. at 688-689).

Substantial evidence does not support ALJ Davenport's finding of "not disabled". ALJ Davenport stated that he gave Dr. Eaton's medical opinion significant weight. (Tr. at 72). In his decision, the ALJ relied on the vocational expert's testimony to find that Plaintiff was capable of performing other jobs that exist in significant numbers in the national economy. It is clear that ALJ Davenport relied on the vocational expert's response to his hypothetical and not Plaintiff's attorney's hypothetical. (Tr. at 73-74). While Plaintiff's attorney's hypothetical exactly matched Dr. Eaton's second assessment, portions of the ALJ's hypothetical are not consistent with either of Dr. Eaton's assessments. ALJ Davenport's hypothetical included only a moderate limitation on the ability to relate to co-workers and the public. In contrast, Dr. Eaton's first assessment indicated that Plaintiff had fair to poor ability to relate with co-workers and poor ability to deal with the public. Dr. Eaton's second assessment found that Plaintiff had poor ability to both relate to co-workers and deal with the public. Had ALJ Davenport given Dr. Eaton's opinion significant weight, as he alleged he did, he would have relied on the vocational expert's testimony in response to Plaintiff's attorney's hypothetical, which tracked Dr. Eaton's opinion exactly. Defendant's contention that the ALJ only assigned limited probative weight to those portions of Dr. Eaton's opinion that were not supported by the evidence is without merit. At no point in ALJ Davenport's decision does he indicate that he discounted a portion of Dr. Eaton's opinion or articulate a reason for not giving the opinion significant weight, as he is required to do. See MacGregor, 786 F. 2d at 1053. The ALJ relied on the vocational expert's response to his hypothetical, but he does not articulate how he determined the limitations that differed from Dr. Eaton's findings in that hypothetical. ALJ Davenport's residual

functional capacity assessment also failed to adopt Dr. Eaton's opinion after he gave it significant weight. See SSR 96-5p. ALJ Davenport's hypothetical did not comprehensively describe Plaintiff's impairments because he improperly discounted Dr. Eaton's opinion. The ALJ thus failed his duty to articulate specific jobs that Plaintiff could perform. See Cowart, 662 F.2d at 736; Jones, 190 F.3d at 1229. Accordingly, this case should be remanded so that the ALJ may make appropriate findings regarding Dr. Eaton's medical opinion.

It is unnecessary to address Plaintiff's remaining enumerations of error at this time.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that the decision of the Commissioner be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

So **REPORTED** and **RECOMMENDED**, this $2$ day of June, 2009.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE